# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

WILLIAM O. HUMPHREY,                          Case No. 1:16-cv-666
      Plaintiff,

                                  Litkovitz, M.J.

      vs.

COMMISSIONER OF                               **ORDER**
SOCIAL SECURITY,
      Defendant.

Plaintiff William O. Humphrey brings this action pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security

("Commissioner") denying plaintiff's application for Supplemental Security Income ("SSI").

This matter is before the Court on plaintiff's statement of errors (Doc. 5), the Commissioner's

response in opposition (Doc. 12), and plaintiff's reply memorandum (Doc. 13).

## I. Procedural Background

Plaintiff was granted SSI disability benefits in February 2000 following a hearing with

Administrative Law Judge ("ALJ") Douglass Custis. (Tr. 163-172). ALJ Custis adopted the

opinion of the testifying medical expert, Dr. Hawkins, and determined that plaintiff met Section

12.08 of the Listing of Impairments for personality disorders. (Tr. 167-68). Plaintiff's benefits

were terminated when he was incarcerated in November 2002. (Tr. 19). After his release from

prison, plaintiff filed an application for SSI in July 2007, alleging disability beginning July 27,

1998. (Tr. 173, 444-450). Plaintiff's application was denied initially and upon reconsideration.

(Tr. 173-174, 231-234). Following a hearing in October 2009, ALJ Sarah Miller issued a

decision finding plaintiff was not disabled. (Tr. 136-162, 175-190). In March 2012, the Appeals

Council remanded plaintiff's case to the ALJ. (Tr. 191-193). In September 2013, ALJ David

Redmond conducted a hearing and issued a decision in February 2014 finding plaintiff was not disabled. (Tr. 107-135, 195-219). In July 2015, the Appeals Council again remanded plaintiff's case to the ALJ for further development of the record and reweighing of the medical opinion evidence. (Tr. 220-224).

In December 2015, ALJ Gregory Kenyon conducted a third hearing. (Tr. 43-75). In January 2016, ALJ Kenyon issued a decision finding that plaintiff was not disabled. (Tr. 16-42). Plaintiff's request for review by the Appeals Council was denied, making ALJ Kenyon's January 2016 decision the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

**B. The Administrative Law Judge's Findings**

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff] has not engaged in substantial gainful activity since July 16, 2007, the application date (20 CFR 416.971 *et seq.*).

2. The [plaintiff] has the following severe impairments: residuals of a lumbosacral strain, depression, and an antisocial personality disorder (20 CFR 416.920(c)).

3. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the [plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) subject to the following limitations: (1) frequent crouching, crawling, kneeling, stooping, and climbing of ramps and stairs; (2) no climbing of ladders, ropes or scaffolds; (3) no work around hazards, such as unprotected heights or dangerous machinery; (4) limited to performing unskilled, simple,

repetitive tasks; (5) occasional, superficial contact with coworkers and supervisors; (6) no public contact; (7) no teamwork or tandem tasks; (8) no close over the shoulder supervision; (9) no fast paced production work or jobs involving strict production quotas; and (10) limited to performing jobs in a relatively static work environment in which there is very little, if any, change in the job duties or the work routine from one day to the next.

5. The [plaintiff] has no past relevant work (20 CFR 416.965).

6. The [plaintiff] was born [in] 1977 and was 30 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The [plaintiff] has a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not at issue because the [plaintiff] does not have past relevant work (20 CFR 416.968).

9. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 416.969 and 416.969(a)).[1]

10. The [plaintiff] has not been under a disability, as defined in the Social Security Act, since July 16, 2007, the date the application was filed (20 CFR 416.920(g)).

(Tr. 19-34).

### C.  Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards.  *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

---

[1] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the jobs of laundry worker (4,500 jobs regionally; 640,000 jobs nationally), hand packager (1,800 jobs regionally; 460,000 jobs nationally), and warehouse worker (7,200 jobs regionally; 1,100,000 jobs nationally).  (Tr. 33-34).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

On appeal, plaintiff alleges that in violation of the rule in *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997), ALJ Kenyon erred (1) by finding new and material evidence documenting a significant change in plaintiff's mental disorders since Judge Custis's 2000 disability finding to justify not adopting ALJ Custis's decision, and (2) by failing to explicitly identify the "new and material evidence" he relied on so as to permit meaningful judicial review of the *Drummond* issue. Plaintiff also contends ALJ Kenyon failed to properly weigh the opinions of the medical sources of record; failed to properly assess plaintiff's credibility; and

posed an unsupported hypothetical question to the VE to satisfy the Commissioner's burden at Step 5 of the sequential evaluation process.

   **1. ALJ Kenyon did not err in applying *Drummond*.**

   Plaintiff argues that the record does not contain new and material evidence as required by *Drummond* to support ALJ Kenyon's finding that plaintiff was no longer disabled under Listing 12.08. Plaintiff also argues that even if his impairments no longer meet Listing 12.08, his anti-social personality disorder "still markedly and extremely impaired him from sustaining work around others for 40 hours a week on any job!" (Doc. 5 at 5). Plaintiff alleges the consultative examinations performed by Dr. Fritsch and Dr. Corbus do not show any substantive change in plaintiff's condition, as both psychologists concluded he was markedly or extremely limited in dealing with supervisors and co-workers. (*Id.*). Plaintiff also alleges that the testimony of Dr. Buban, the medical expert who testified at plaintiff's second ALJ hearing after remand by the Appeals Council, does not show a substantive change in plaintiff's condition such that he would no longer be disabled. Finally, plaintiff contends ALJ Kenyon failed to identify the "new and material" evidence he relied on in finding he was not bound by ALJ Custis's prior decision and therefore this Court cannot meaningfully review that evidence in relation to ALJ Custis's 2000 decision.

   The Commissioner responds that plaintiff has made no attempt to show how he meets all of the specified medical criteria of Listing 12.08 because: (1) he has made no direct argument regarding the "A" criteria of Listing 12.08, and (2) he does not raise arguments regarding the severity of his limitations in activities of daily living; concentration, persistence, and pace; or his episodes of decompensation for purposes of the "B" criteria of the listing. The Commissioner also argues that to the extent plaintiff contends the ALJ's weighing of the opinion evidence

impacted his findings of whether plaintiff met or equaled Listing 12.08, the record as a whole

supports the ALJ's evaluation of the medical sources in this case.

In *Drummond*, the Sixth Circuit held that Social Security claimants and the

Commissioner are barred from re-litigating issues that have previously been determined at the

administrative level. 126 F.3d at 842. *See also* 42 U.S.C. § 405(h) ("The findings and decision

of the Commissioner of Social Security after a hearing shall be binding on all individuals who

were parties to such a hearing."). *Drummond* mandates that "[a]bsent evidence of improvement

in a claimant's condition," the findings of an ALJ as part of a prior disability determination are

binding on a subsequent ALJ in later proceedings. 126 F.3d at 842. The Commissioner bears

the burden to prove changed circumstances so as to escape being bound by principles of res

judicata. *Id.* at 843.

Following the decision in *Drummond*, the Commissioner issued an Acquiescence Ruling

mandating that ALJs in Ohio (and other states within the Sixth Circuit) follow *Drummond* by

applying res judicata to a prior assessment of a claimant's RFC. The Acquiescence Ruling

explains:

> When adjudicating a subsequent disability claim with an unadjudicated period
> arising under the same title of the Act as the prior claim, adjudicators must adopt
> such a finding from the final decision by an ALJ or the Appeals Council on the
> prior claim in determining whether the claimant is disabled with respect to the
> unadjudicated period unless there is new and material evidence relating to such a
> finding or there has been a change in the law. . . .

AR 98-4(6), 1998 WL 283902, at *3 (June 1, 1998). In analyzing the question of changed

circumstances, "[n]either *Drummond* nor SSAR 98–4(6) require the ALJ to make specific

comparisons with the evidence supporting the prior final decision." *Rudd v. Comm'r of Soc.

Sec.*, 531 F. App'x 719, 725 (6th Cir. 2013). "The proper focus is on the evidence since the prior

ALJ's decision." *Id*. at 726 (citing *Collier v. Comm'r of Soc. Sec*., 108 F. App'x 358, 362-63

(6th Cir. 2004) (holding that new medical evidence supported the ALJ's finding of a higher RFC than a previous decision without comparison to evidence supporting prior decision)).

The record shows that on February 16, 2000, ALJ Custis found plaintiff met Listing 12.08 for personality disorders and was disabled:

> Psychiatrist, James E. Hawkins, M.D., a medical expert, testified at the hearing that charges involving trespassing and rape, a past history of drug and alcohol abuse, an unwillingness to take on responsibilities, and the fact that the claimant does not like to be around people are indicative of a severe impairment which meets sections (sic) 12.08 of the Listing of Impairments. The undersigned adopts the opinion of Dr. Hawkins, and concludes the claimant's personality disorder causes slight restriction in activities of daily living; marked limitation in social functioning; frequent limitations in concentration, persistence and pace; and results in repeated episodes of deterioration or decompensation. Thus, the claimant is precluded from doing any work that exists in significant numbers in the economy.

(Tr. 167-68).[2] ALJ Custis gave "greater weight" to the opinion of Dr. Hawkins than to the opinions of the state agency psychologists who opined that plaintiff was only moderately limited in the relevant work-related abilities.

ALJ Kenyon acknowledged that plaintiff had previously been granted disability benefits and addressed the *Drummond* issue as follows:

> The undersigned notes that the claimant previously filed an application for supplemental security income in July 1998, and Administrative Law Judge Douglass L. Custis eventually issued a decision on February 16, 2000, finding that the claimant was disabled (see Exhibit B1A). His benefits were ceased upon his incarceration at Chillicothe Correctional in November 2002. The claimant protectively filed his current application for a period of disability and supplemental security income on July 16, 2007. Unless new and material evidence or changed circumstances provide a basis for a different finding concerning a claimant's residual functional capacity, the Administration cannot make a different finding in adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act (Acquiescence Ruling

---

[2] At the time of ALJ Custis's decision, Listing 12.08 required "[d]eficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2000 ed.). The paragraph B criteria of the mental disorder listings are now rated on a five-point rating scale: no limitation (or none), mild limitation, moderate limitation, marked limitation, and extreme limitation. Listing 12.00F.2. The B criteria of Listing 12.08 currently require "marked" difficulties in maintaining concentration, persistence, or pace.

98-4(6); *Drummond v. Commissioner*, 126 F.3d 837 (6th Cir. 1997)). In this case, there is new and material evidence documenting a significant change in the claimant's condition. Thus, Judge Custis's previous residual functional capacity determination is not binding.

(Tr. 19).

As an initial matter, the Court disagrees with plaintiff's argument that ALJ Kenyon's decision precludes meaningful judicial review of the *Drummond* issue. While plaintiff is correct that ALJ Kenyon did not explicitly identify the "new and material" evidence he relied on when discussing *Drummond* (Tr. 19), there is undoubtedly "new" evidence in the record post-dating ALJ Custis's 2000 decision that ALJ Kenyon discussed and thoroughly reviewed throughout his decision. This includes plaintiff's lengthy prison records, the consultative examinations by Drs. Fritsch and Corbus, Dr. Buban's testimony at the second ALJ hearing, and plaintiff's sporadic mental health treatment between his prison incarcerations. ALJ Kenyon's decision implicitly shows that he considered this new evidence in the record and determined that it demonstrated a significant change in plaintiff's condition which warranted a departure from ALJ Custis's listing decision. Specifically, ALJ Kenyon found that plaintiff no longer met the requirements for Listing 12.08 based on the paragraph B criteria of the listing. (Tr. 22-23). ALJ Kenyon's decision permits meaningful judicial review in this case.

Neither *Drummond* nor AR 98-4(6) contains any formalistic requirements. As long as substantial evidence supports ALJ Kenyon's conclusion that new and material evidence warranted a departure from ALJ Custis's listing decision, the Court should affirm ALJ Kenyon's decision on his application of *Drummond*. *See Ballatore v. Comm'r of Soc. Sec.*, No. 11-cv-15335, 2014 WL 2765269, at *5-6 (E.D. Mich. June 18, 2014) (in determining plaintiff's current disability status, ALJ had a reasonable basis in law for relying on new medical records that post-dated prior ALJ's decision even though current ALJ did not quote or explain the disability

finding of prior ALJ) (analyzing *Rudd* and *Collier*); *Williams v. Astrue*, 2010 WL 503140, at *3-5 (E.D. Tenn. Feb. 8, 2010) (failure to expressly point out which evidence was relied on was not error where ALJ discussed evidence post-dating prior ALJ's opinion). For the reasons that follow, the Court finds ALJ Kenyon reasonably relied on new and material evidence in departing from ALJ Custis's listing decision.

ALJ Kenyon determined, and plaintiff does not dispute, that the evidence post-dating ALJ Custis's decision showed plaintiff was only moderately limited in his ability to maintain concentration, persistence or pace. (Tr. 23). While both Drs. Fritsch and Corbus significantly limited plaintiff's ability to deal with the public, supervisors, and co-workers, neither imposed limitations in concentration, persistence or pace as restrictive as those imposed by Dr. Humphreys and adopted by ALJ Custis in 2000. Rather, Dr. Fritsch opined that plaintiff was able to understand and remember short, simple instructions and should have no difficulty carrying out such instructions. Dr. Corbus opined that plaintiff was "fleetingly able" to concentrate and would "likely have difficulty with attention and concentration." He also found that on tasks requiring rapid timed performance plaintiff "may show work pace similar to that of his work peers." (Tr. 695). Dr. Corbus did not, however, opine that plaintiff would be markedly impaired in his ability to maintain attention and concentration, persistence and pace to perform simple tasks (Tr. 695, 698) and plaintiff has not raised an argument or cited any evidence to the contrary. Plaintiff has not shown he satisfies the B criteria of Listing 12.08 requiring marked limitation in at least two areas of functioning.[3] Therefore, ALJ Kenyon did not err under *Drummond* by declining to adopt ALJ Custis's Listing 12.08 decision.

---

[3] Plaintiff's argument that Dr. Buban's testimony does not show a significant change in plaintiff's mental condition is based on his belief that Dr. Buban's testimony was flawed. This will be addressed in connection with plaintiff's second assignment of error.

**2. ALJ Kenyon's weighing of the medical opinion evidence is supported by substantial evidence.**

Plaintiff alleges ALJ Kenyon erred by giving more weight to state agency reviewing psychologist Dr. Marlow and medical expert Dr. Buban than to the consultative examiners, Drs. Fritsch and Corbus. Plaintiff contends that the ALJ was required to give more weight to the examining sources than to the nonexamining sources and to apply a more rigorous standard of review to a nonexamining source versus an examining one. (Doc. 5 at 6, citing *Gayheart*, 710 F.3d at 379-80).[4]

In weighing the opinions of medical sources, there is a hierarchy of medical opinions. An ALJ must give "controlling" weight to the opinion of a claimant's treating physician if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record . . . ." 20 C.F.R § 416.927(c)(2).[5] Unless the opinion of the treating source is entitled to controlling weight, an ALJ must "evaluate all medical opinions" with regard to the factors set forth in 20 C.F.R. § 416.927(c). The opinion of a non-treating but examining medical source is weighed based on the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. § 416.927(c)(3)-(6). The opinion of a non-treating but examining source is generally entitled to more weight than the opinion of a nonexamining source. *Ealy v. Comm'r of Soc. Sec.,* 594 F.3d 504, 514 (6th Cir. 2010); *Smith v. Comm'r of Soc. Sec.,* 482 F.3d 873, 875 (6th Cir. 2007); 20 C.F.R. § 416.927(c)(1). Under the Social Security regulations, "a written

---

[4] "By including the existence of an examining and treating relationship in the factors determining the weight to be accorded to different medical opinions, '[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker.'" *Keeton v. Comm'r of Soc. Sec.,* 583 F. App'x 515, 525 (6th Cir. 2014) (quoting *Gayheart,* 710 F.3d at 375-76).

[5] For claims filed on or after March 27, 2017, the rules in § 416.920c apply to weighing the opinion evidence. 20 C.F.R. § 416.927.

report by a licensed physician who has examined the claimant and who sets forth in his report his medical findings in his area of competence . . . may constitute substantial evidence . . . adverse to the claimant" in a disability proceeding. *Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 713 (6th Cir. 2013) (quoting *Richardson v. Perales*, 402 U.S. 389, 402 (1971)). In addition, the opinions of state agency medical and psychological consultants may be entitled to significant weight where they are supported by record evidence. *Id.* (citing 20 C.F.R. § 404.1527(e)(2)(i)). Because a nonexamining source has no examining or treating relationship with the claimant, the weight to be afforded the opinion of a nonexamining source depends on the degree to which the source provides supporting explanations for his opinion and the degree to which his opinion considers all of the pertinent evidence in the record, including the opinions of treating and other examining sources. 20 C.F.R. § 416.927(c)(3).

Dr. Fritsch found plaintiff was markedly impaired in his ability to deal with the public and coworkers and extremely impaired in his ability to deal with supervisors. (Tr. 650). The ALJ gave little weight to Dr. Fritsch's opinion that plaintiff was markedly to extremely impaired in his social functioning and markedly impaired in his ability to respond to the basic commands and pressures of employment. (Tr. 31). The ALJ determined that Dr. Fritsch's examination findings were relatively benign; there was no evidence in his report of acute mental illness or any loss of contact with reality; and Dr. Fritsch appeared to base his conclusion that plaintiff could not interact with others on plaintiff's subjective complaints. (*Id.*).

Dr. Corbus opined that plaintiff was markedly impaired in his ability to interact appropriately with supervisors, co-workers, and the public, and to respond to changes in the routine work setting. (Tr. 699). The ALJ gave moderate weight to Dr. Corbus's opinion (Tr. 32), noting that Dr. Corbus's mental status exam was essentially normal, with no evidence of psychosis or loss of contact with reality. The ALJ determined that Dr. Corbus "simply accepted

[plaintiff's] complaints that he was pathologically unable to get along with others as fact without any inquiry into whether these allegations are objectively supported." (Tr. 32).

The ALJ gave great weight to the opinions of Dr. Buban, the medical expert who testified at the second ALJ hearing, reasoning as follows:

> Dr. Buban testified at the previous hearing that the claimant had been diagnosed at various times with depression, substance induced mood disorder, history of poly substance abuse, and anti-social personality disorder. Dr. Buban also noted that the claimant's GAF[6] scores from his most recent incarceration ranged between 65 and 80, indicating only mild symptoms. Dr. Buban discussed the claimant's history of medication noncompliance and the lack of indication of physical altercations during prison. Dr. Buban also noted that while he primarily reported problems relating with others, his most recent progress notes indicate that he was applying for jobs, working at flea markets, attending school, completing projects, and feeling more productive. Dr. Buban opined that the claimant's impairments did not meet or equal the criteria of any listing section. Dr. Buban's testimony is consistent with the objective medical evidence and the opinions of Dr. Corbus, as well as the claimant's own reports in later records. Therefore, the undersigned gives great weight to the opinions of this impartial medical expert.

(Tr. 32).

The ALJ also gave great weight to the opinion of Robelyn Marlow, Ph.D., a state agency psychologist who reviewed the record in November 2007. (Tr. 31). Dr. Marlow opined that plaintiff was moderately limited in his ability to maintain social functioning and in concentration, persistence or pace. The ALJ found that Dr. Marlow's opinion was supported by the objective evidence and the opinions of Dr. Buban and Dr. Corbus. (*Id.*).

Plaintiff contends ALJ Kenyon erred by giving great weight to Dr. Marlow's opinion because he failed to apply a more rigorous standard of review to Dr. Marlow's opinion, which

---

[6] A Global Assessment of Functioning ("GAF") score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed., text rev. 2000). The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death)." *Id.* at 34.

was premised on factual inaccuracies and an incomplete record. Plaintiff alleges that Dr. Marlow last reviewed the file in 2007; relied on the mistaken belief that ALJ Custis was not aware of plaintiff's drug and alcohol use; and relied, in part, on an inaccurate history of factory work. (Doc. 5 at 8, citing Tr. 678, 31). Plaintiff contends that had the ALJ noted these errors, he would not have given Dr. Marlow's opinions great weight.

First, Dr. Marlow's statement that plaintiff had an employment history that included factory work was accurate. Plaintiff reported to Dr. Fritsch that he "worked in entry-level positions such as factory labor" when describing his work history (Tr. 648), which Dr. Marlow accurately observed.

Plaintiff is correct that contrary to Dr. Marlow's statement that ALJ Custis failed to account for plaintiff's drug use (Tr. 678), ALJ Custis's 2000 decision noted plaintiff had "a past history of drug and alcohol abuse." (Tr. 167). However, Dr. Marlow's mistaken belief that ALJ Custis was not aware of such abuse was only one of many reasons Dr. Marlow gave for her opinion on plaintiff's functional capacity. Dr. Marlow accurately noted that at the time she gave her opinion, plaintiff was not receiving mental health treatment or medications. (Tr. 678). He was on the mental health caseload while in prison for only a brief time and he was noted to be non-compliant with his medications. (*Id.*). Dr. Marlow stated that plaintiff was able to get along with others while in the prison system. She also pointed out that Dr. Fritsch's conclusions were based on plaintiff's self-reports and there was no medical evidence suggesting he could not get along with others on a superficial basis. (*Id.*). These reasons are substantially supported by the evidence of record as explained below, and any mistake in relation to plaintiff's drug and alcohol use was at most harmless error.

Plaintiff is also correct that Dr. Marlow's review covers the record evidence only up to November 2007. However, plaintiff fails to explain how the medical evidence subsequent to Dr.

Marlow's opinion renders her opinion unreliable, particularly given the relatively benign findings in plaintiff's prison records that do not substantiate a history of fighting with other inmates or other conflicts with inmates and staff.

The crux of this case is the opinion of Dr. Buban, who testified as a medical expert at plaintiff's second ALJ hearing. Dr. Buban was able to review all of the medical evidence of record, including the consultative examinations of Drs. Fritsch and Corbus, plaintiff's prison records, and plaintiff's more recent mental health records. As Dr. Buban noted, the consultative examiners' most extreme limitations on plaintiff's social functioning were based on his self-reported history of poor emotional/behavioral control and inability to get along with others. (Tr. 117, 118, 120). Dr. Buban opined that the extreme restrictions were not borne out by the prison records, which spanned a number of years and provided a more thorough insight into the extent of plaintiff's social limitations than the single exams by the consultative examiners. (Tr. 120). Dr. Buban testified that the prison records do not support plaintiff's claims of constant fights with other inmates and conflicts with others. Dr. Buban also testified that plaintiff's GAF scores in prison indicated only a mild impairment, the prison records showed a history of medication noncompliance, and recent progress notes showed that after plaintiff was released from prison he applied for jobs, worked at flea markets, attended school, completed projects, and felt more productive. (Tr. 115-118). Dr. Buban concluded based on this evidence that plaintiff did not have the marked limitation in social functioning required by the listings, and ALJ Kenyon reasonably relied on Dr. Buban's testimony.

Plaintiff takes issue with Dr. Buban's testimony because she was mistaken that plaintiff had no physical outbursts in prison and she did not review any medical records after 2013. (Doc. 5 at 6). However, the evidence plaintiff cites in support of this argument does not support his

allegation that he fought "hundreds of times" when in prison (Tr. 120) or a finding that he had conflicts with others such that he was markedly limited in social functioning.

Plaintiff cites to the record in support of the proposition that he was fighting every day in 2011. (Doc. 5 at 7, citing Tr. 706). This is not accurate. The note plaintiff cites actually states that while in prison he lived in an open dorm with 240 people and there were "fights every day," not that plaintiff was fighting every day. (Tr. 706). Plaintiff self-reported only that he "was fighting a lot because I stand up for myself." (*Id.*). Plaintiff also cites to records showing he had placements in segregation. Plaintiff cites to two Mental Health Segregation Self-Report Admission Screenings in which plaintiff reported this was not his first time in segregation (Tr. 737-10/5/06; Tr. 740-6/24/06) and two progress notes showing segregation placements in July and October 2006. (Tr. 1027, 1031). Those records do not reflect the reasons for plaintiff's placement in segregation, but they specifically note that plaintiff was not brought to segregation due to a serious infraction such as assault/battery or drugs/contraband. (Tr. 737, 740). Plaintiff also cites to a prison note from June 2005 reflecting he had "fighting behavior 2 years ago" (Doc. 5 at 7, citing Tr. 742), which is consistent with plaintiff's citation to a note from June 2003 indicating plaintiff had a fight a few months earlier (Tr. 759). Plaintiff also notes that in December 2008, he was examined by the medical department "for a fight check." (Doc. 5 at 7, citing Tr. 968).

While plaintiff's incarcerations spanned more than eight years, plaintiff has cited to only two notes indicating fighting behavior and three apparent placements in segregation for unknown reasons. These limited notes belie plaintiff's claim that he was fighting "every day" or that plaintiff had a significant history of fighting or conflicts with inmates or prison staff. Dr. Buban's testimony that she did not see evidence of "significant difficulties [in] getting along with others" in plaintiff's prison records is supported by the evidence and ALJ Kenyon

reasonably relied on this testimony in assessing the weight to give the consultative examiners' opinions.

Plaintiff also cites to a single record from the Butler County Jail in December 2014 where he reported that "he often becomes agitated with others in which he will stay in his cell" and he has impulse control problems. (Tr. 1114, 1117). Plaintiff contends Dr. Buban did not see this later record because she testified in 2013. However, plaintiff fails to allege how this single record, which does not indicate a persistent history of interpersonal conflict or fighting behavior, is inconsistent with or would change Dr. Buban's opinion.

Finally, plaintiff takes issue with Dr. Buban's testimony concerning his GAF scores in prison, which "were all 65 to 80, which would indicate mild symptoms." (Tr. 115). Plaintiff contends these scores were obtained "in the controlled environment of a State prison" where he "was isolated for much of the time." (Doc. 5 at 5, citing Tr. 1114). The note plaintiff cites is not from a state prison, but from the Butler County Jail. Plaintiff reported that while he was in prison, he lived in an open dorm with 240 other inmates. (Tr. 706). Plaintiff has not cited to any other evidence showing he was "isolated for much of the time" so as to suggest the GAF scores he obtained in prison were not accurate.

Plaintiff argues that because Drs. Fritsch and Corbus "interviewed [plaintiff], listened to the tone of his voice, and observed his facial and body expressions" their opinions are entitled to more weight than those of Drs. Marlow and Buban, the nonexamining psychologists. (Doc. 5 at 8-9). Plaintiff essentially argues that the ALJ erred by not following the general rule that more weight is given to examining sources over nonexamining sources. While "the opinions of nontreating [examining] sources are generally accorded more weight than nonexamining sources, it is not a per se error of law, as [plaintiff] suggests, for the ALJ to credit a nonexamining source over a nontreating source. Any record opinion, even that of a treating source, may be rejected by

the ALJ when the source's opinion is not well supported by medical diagnostics or if it is inconsistent with the record." *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012) (citing 20 C.F.R. §§ 404.1527, 416.927; *Ealy,* 594 F.3d at 514). The ALJ's decision to credit the opinions of Dr. Buban and Dr. Marlow over those of Drs. Fritsch and Corbus is substantially supported by the longitudinal record as set forth in plaintiff's prison records as well as the mental health records subsequent to plaintiff's release from prison, which showed he was trying not to be angry all the time, had learned a lot of patience, was becoming significantly less impulsive, was no longer acting out oppositional feelings, was feeling anxious but more focused, was making ends meet with flea market work, and was going to school. (Tr. 27, 701, 711). The opinions of Drs. Buban and Marlow were more consistent with this record evidence, and the ALJ adequately explained his decision in weighing the opinions of the examining and nonexamining sources. *Norris,* 461 F. App'x at 440 ("While perhaps the ALJ could have provided greater detail, particularly as to why the nonexamining opinions were more consistent with the overall record, the ALJ was under no special obligation to do so insofar as he was weighing the respective opinions of nontreating versus nonexamining sources.") (citing *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007)). Plaintiff's second assignment of error is overruled.

**3. Plaintiff has failed to establish any error with the ALJ's credibility finding.**

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 247 (6th Cir. 2007) (citations omitted). In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir. 2001). *See also Walters v. Comm'r. of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) ("[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an

ALJ is charged with the duty of observing a witness's demeanor and credibility."). Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Id*.

Upon review of the ALJ's complete credibility determination, the Court finds the ALJ's credibility finding is substantially supported by the evidence of record and is entitled to deference. The ALJ cited seven primary reasons for finding plaintiff's subjective allegations and complaints were not fully credible to the extent they would preclude a restricted range of medium work: (1) plaintiff's inconsistent treatment history; (2) plaintiff's sporadic treatment in prison and noncompliance with treatment; (3) plaintiff's voluntary cessation of treatment in prison based on his reports of stable symptoms; (4) plaintiff's relatively positive outlook following his release from prison, including his commitment to managing his symptoms and trying to improve his condition; (5) progress notes showing plaintiff continued to look for work and that he worked odd jobs to make money; (6) plaintiff's daily activities showing his pain and depression do not seriously interfere with his ability to maintain attention and concentration, perform routine tasks, understand and follow simple instructions, and interact with others; and (7) plaintiff's inconsistent statements regarding his polysubstance abuse. (Tr. 28, 30). Plaintiff takes issue with several of these reasons.

Plaintiff contends the ALJ erred "in talking about non-compliance, as there is no evidence that any prescribed treatment would restore the ability to work, required for non-compliance under 20 C.F.R. § 416.930 and [Social Security] Ruling 82-59 (1982)." (Doc. 5 at 9). The ALJ considered plaintiff's noncompliance with medication only insofar as it bore on plaintiff's credibility, not as a basis for denying disability benefits under the regulations or Social Security Rulings. Medication compliance is a relevant factor for an ALJ to consider in assessing an individual's credibility. *See* Social Security Ruling 96-7p, 1996 WL 374186 ("[T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent

with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure.").  ALJ Kenyon committed no error in this regard.

Plaintiff also contends that the activities of daily living cited by the ALJ do not support the ALJ's credibility finding.  Plaintiff alleges he "stays to himself at home (wisely so).  If he hunts and fishes, he does these activities alone!"  (Doc. 5 at 10).  However, plaintiff has not cited to any evidence or testimony in the record to support these allegations.  Moreover, the progress notes that indicate plaintiff was applying for jobs, working at flea markets and swap meets, and attending school belie his allegations of performing activities in isolation.  (Tr. 701).

Plaintiff additionally makes fleeting references to substance use not being "material" under 20 C.F.R. § 416.935 and his limited work history in connection with his credibility assignment of error.  Plaintiff has not developed his perfunctory arguments that the ALJ erred in evaluating his credibility in these respects.  Plaintiff has therefore waived these arguments.  *See Kuhn v. Washtenaw County,* 709 F.3d 612, 624 (6th Cir. 2013) (the Sixth Circuit "has consistently held that arguments not raised in a party's opening brief, as well as arguments adverted to in only a perfunctory manner, are waived") (citing *Caudill v. Hollan,* 431 F.3d 900, 915 n. 13 (6th Cir. 2005) (citing recent decisions that stand for these two related propositions)).

Finally, plaintiff contends the ALJ erred in assessing his credibility because there is objective evidence to support plaintiff's limitations.  This includes evidence he was lethargic on examination, he had a long history of impulse control problems, he was found to be honest and a reliable historian during his psychological examinations, he was hyperactive during an interview, and he had a shifting mood, racing thoughts, and PTSD symptoms.  (Doc. 5 at 9, citing Tr. 648, 649, 690, 693).   However, even where substantial evidence would support a different conclusion or where a reviewing court would have decided the matter differently, the ALJ's decision must

be affirmed if it is supported by substantial evidence.  *See Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999).  Though there is some medical evidence supporting plaintiff's testimony, the ALJ's credibility determination is substantially supported by the reasons identified by ALJ Kenyon and should not be disturbed by this Court.  *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

The ALJ cited ample reasons for discounting plaintiff's credibility.  Because the ALJ's credibility determination is supported by substantial evidence, this Court must defer to it.  *See Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).  Plaintiff's third assignment of error is overruled.

### 4.  The ALJ did not err by posing an improper hypothetical question to the VE.

Plaintiff contends, without citing legal authority, that the ALJ erred by failing to accommodate plaintiff's moderate limitations in concentration, persistence, or pace in the hypothetical questions posed to the VE.

ALJ Kenyon limited plaintiff to unskilled, simple, repetitive tasks with no fast paced production work or jobs involving strict production quotas.  (Tr. 24).  Because the record does not reflect any concrete functional limitations on plaintiff's ability to maintain concentration, persistence, or pace when performing simple, repetitive, or routine tasks, the ALJ's hypothetical question to the VE was sufficient to convey plaintiff's moderate limitations.  *See Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 635 (6th Cir. 2016) ("Case law in this Circuit does not support a rule that a hypothetical providing for simple, unskilled work is per se insufficient to convey moderate limitations in concentration, persistence and pace."); *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 436-37 (6th Cir. 2014) (claimant's moderate limitations in concentration, persistence and pace were conveyed by ALJ's hypothetical limitation to "simple, routine, and repetitive tasks" because psychologist "did not place any concrete functional

limitations on [plaintiff's] abilities to maintain attention, concentration, or pace when performing simple, repetitive, or routine tasks").

Plaintiff has not shown he suffers from additional mental work-related restrictions that are supported by the evidence of record which the ALJ credited but erroneously omitted from the RFC and from the hypothetical to the VE. Accordingly, plaintiff's fourth assignment of error is overruled.

## IT IS THEREFORE ORDERED THAT:

The decision of the Commissioner is **AFFIRMED** and this case is closed on the docket of the Court.


Date:   9/1/17                                    *s/Karen L. Litkovitz*
                                                  Karen L. Litkovitz
                                                  United States Magistrate Judge